IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

LEQUILLESS GAINES,    )
             )
    Petitioner,   )
             )
             )  CIV-08-658-F
v.            )
             )
RANDALL WORKMAN, Warden, )
             )
    Respondent.  )

REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of
Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is challenging the convictions for
Assault and Battery with a Dangerous Weapon After Former Conviction of Two or More
Felonies, Domestic Abuse (two counts), and Burglary in the First Degree After Former
Conviction of Two or More Felonies entered in the District Court of Oklahoma County, Case
No. CF-2004-2175.[1]  Respondent has responded to the Petition and filed the relevant state

---

[1]Petitioner was sentenced for the misdemeanor convictions for Domestic Abuse to two one-
year terms of imprisonment, to run consecutively with the 20-year term of imprisonment entered for
the assault and battery conviction and the 23-year term of imprisonment entered for the first degree
burglary conviction.  Public records of the Oklahoma Department of Corrections show that
Petitioner is serving only the terms of imprisonment for the assault and battery and the burglary
convictions. http://doc.state.ok.us (Offender information for Lequilless A. Gaines, accessed Aug.
15, 2008).  If Petitioner has served his sentences for the misdemeanor offenses, federal habeas
review of the merits of his claims related to these convictions is unavailable. 28 U.S.C. §§ 2241(c),
2254(a).  However, the record is not clear in this respect, and therefore the misdemeanor convictions
have not been excluded from review.

court records, including the transcript of Petitioner's trial (hereinafter "TR__") and the original court record (hereinafter "OR__"). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that the Petition be denied.

I. Background

Petitioner was charged in the District Court of Oklahoma County, Case No. CF-2004-2175, in an information with the offenses of Assault and Battery with a Dangerous Weapon and Domestic Abuse. OR 1-3.  The information charged, *inter alia*, that Petitioner whipped the victim with a belt on or about March 30, 2004. The information and a subsequent amended information charged that Petitioner had committed the felony assault and battery offense after three prior felony convictions. OR 3, 50. In a separate information, Petitioner was charged with having committed the offenses of Kidnapping, Burglary in the First Degree, Domestic Abuse, and Possession of Marijuana. www.oscn.net/applications/oscn/ (docket sheet for Case Number CF-2004-2226 accessed August 18, 2008).  These charges involved Petitioner's alleged actions involving the same victim but on a different date, April 11, 2004. TR vol. I, at 24-25, 30-32. Petitioner was charged with having committed the felony offenses after prior felony convictions. Id.  He retained private counsel, and the two cases were consolidated for trial. OR 44; TR vol. I, at 7-8.  A jury trial on the charges was conducted on February 15-17, 2005.  The jury found Petitioner guilty of the offenses of Assault and Battery with a Dangerous Weapon, two counts of Domestic Abuse, and Burglary in the First Degree.  The jury acquitted Petitioner of the charges of Kidnapping and

Possession of Marijuana.  In the second stage of the bifurcated trial, the jury found Petitioner had committed the felony offenses of Assault and Battery with a Dangerous Weapon and Burglary in the First Degree after two or more prior felony convictions and recommended sentences of 20 years of imprisonment for the assault and battery offense, one year of imprisonment for each of the domestic abuse offenses, and 23 years of imprisonment for the burglary offense.  Petitioner was sentenced consistent with the jury's verdict, and the court imposed $1,000.00 fines for the two domestic abuse convictions.

Petitioner retained new counsel for his direct appeal.  In the appeal, Petitioner asserted in a 41-page brief that he was denied effective assistance of trial counsel in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.  Specifically, Petitioner asserted that his defense counsel was ineffective in failing to remove an objectionable juror for cause and in failing to have the *voir dire* of the prospective jurors recorded and transcribed.  Petitioner also asserted that his defense counsel was ineffective in failing to request a jury instruction on self-defense, failing to object to prosecutorial misconduct, and failing to request at sentencing that the sentences run concurrently.  In additional grounds for relief presented in the appeal, Petitioner asserted that the trial court committed reversible error in failing to instruct the jury on the defense of self-defense, the trial court abused its discretion in ordering Petitioner's sentences to run consecutively, the sentences imposed were grossly disproportionate to the crimes committed and excessive as a matter of law, prosecutorial misconduct during closing arguments denied Petitioner's rights in violation of the Fifth, Sixth, and Fourteenth Amendments, and cumulative errors denied Petitioner's right to a fair

trial under the United States and Oklahoma constitutions. Response, Ex. 1 (Brief of Appellant, <u>Gaines v. State of Oklahoma</u>, No. F-2005-213).  In connection with the appeal, Petitioner moved to supplement the record and requested a remand to the district court in order to conduct an evidentiary hearing pursuant to Rule 3.11(B)(3)(b) of the Rules of the Oklahoma Court of Criminal Appeals concerning his defense counsel's failure to record *voir dire* and remove a juror.  Petitioner also requested a remand to the district court in order to correct the sentencing transcript with respect to the transcription of certain dialogue during the Petitioner's sentencing proceeding that was incorrect.  The State responded in opposition to each of Petitioner's grounds for relief and to his application for a remand to conduct an evidentiary hearing. Response, Ex. 2 (Brief of Appellee).  The Oklahoma Court of Criminal Appeals ("OCCA") issued an order in October 2005 remanding the matter to the district court for findings of fact and conclusions of law with respect to "whether the appeal record can be supplemented" as Petitioner requested "or whether a transcription of *voir dire* is not available" and also "whether the trial transcript [of sentencing] should be amended pursuant to [Petitioner's] objections" concerning certain "dialog between counsel for [Petitioner], the trial judge, and [Petitioner], found at page 186 lines 1 - 12 of Volume 2 of the jury trial transcript...."  Response, Ex. 8.  In a response to this order, the district court advised the OCCA that "*voir dire* was not requested and was not reported" and therefore could not be transcribed. Response, Ex. 9.  Further, the district court advised the OCCA that the trial transcript should be amended to reflect an accurate record of the sentencing proceeding, as requested by Petitioner. Response, Ex. 9.

The OCCA issued a decision in Petitioner's appeal on May 10, 2007. Response, Ex. 3. In its opinion, the OCCA denied Petitioner's request for a remand for an evidentiary hearing on Petitioner's ineffective assistance of trial counsel claim based on the court's finding that, applying the standard set out in the OCCA's procedural rules, Petitioner had not shown by clear and convincing evidence that there was a strong possibility counsel was ineffective.   On their merits, the OCCA rejected each of Petitioner's contentions of ineffective assistance of trial counsel.  The appellate court also rejected Petitioner's assertion of error in the failure to give self-defense instructions because Petitioner "was the aggressor and therefore not entitled to the instructions." Response, Ex. 3, at 3.  The court found that the trial court did not abuse its discretion in ordering Petitioner's sentences to be served consecutively and found that the length of Petitioner's sentences did not shock the conscience of the court.  However, the court found that the trial court erred in assessing fines for the domestic abuse convictions and vacated those fines.  With respect to Petitioner's claim of prosecutorial misconduct, the court found that "[t]he prosecutor's argument was based on reasonable inferences from the evidence and was fair comment on the victim's bias." Response, Ex. 3, at 4.  Consequently, the court rejected this claim, and the court also rejected Petitioner's claim that cumulative errors warranted relief.

Petitioner subsequently applied for post-conviction relief in the district court.  The district court denied the post-conviction application, and Petitioner appealed the decision. Response, Ex. 4 (Appeal from Order Denying Application for Post Conviction Relief from the District Court of Oklahoma County, Oklahoma Case No. CF-04-2175, <u>Gaines v. State</u>

of Oklahoma, No. PC-2008-276).   In his post-conviction appeal, Petitioner asserted that (1) insufficient evidence was presented at trial to support the jury's verdict, violating Petitioner's due process rights under Jackson v. Virginia, 443 U.S. 307, 309 (1979), and its progeny; (2) Petitioner's Sixth and Fourteenth Amendment rights were violated by the trial court and trial counsel's actions that "allowed an objectionable juror to remain on the jury whose mother was a victim of consistent domestic abuse and assault, the same identical crimes charged, that appellant was tried and convicted of in CF-04-2175, Counts 1, 2 and 5;" (3) Petitioner was denied effective assistance of appellate counsel because his appellate counsel "failed and refused on remand to develop the factual basis of Assignment of Error 2 by amending the trial record with live testimony from witnesses after an evidentiary hearing regarding juror issue, Assignment 2 and raising the specific arguable issue" in the appeal; and (4) prosecutorial misconduct during closing argument denied Petitioner due process and a fair trial. Response, Ex. 4.  The OCCA issued an Order Affirming Denial of Application for Post Conviction Relief in Petitioner's post-conviction appeal on May 20, 2008. Response, Ex. 5. The OCCA affirmed the district court's denial of the post-conviction application and found that all of Petitioner's claims except his claim of ineffective assistance of appellate counsel were procedurally barred because they had been raised in his direct appeal or were not raised and were therefore waived.  With respect to Petitioner's claim of ineffective assistance of appellate counsel, the court found that Petitioner's appellate counsel was not ineffective under the governing standard set forth in Strickland v. Washington, 466 U.S. 688 (1984). Petitioner now seeks federal habeas relief with respect to his convictions in Case No. CF-

2004-2175.

II. Standard of Review

With respect to the claims raised by Petitioner in grounds two, three, and four that were adjudicated on their merits by the OCCA in Petitioner's direct appeal and post-conviction appeal, the standard for reviewing these claims is prescribed by the Antiterrorism and Effective Death Penalty Act ("AEDPA").   Under this standard, habeas relief may be awarded if the state appellate court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).   Judicial review is directed to the result of the state appellate court's decision, not its reasoning.  Saiz v. Ortiz, 392 F.3d 1166, 1176 (10th Cir. 2004), cert. denied, 545 U.S. 1146 (2005).  Federal courts must apply a "level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).  If there is no clearly established federal law in Supreme Court cases involving facts that are closely related or similar to those in the case being reviewed, the court need not assess whether the state court's holding was "contrary to" or an "unreasonable application" of established federal law. House v. Hatch, 527 F.3d 1010, 1016-1017 (10th Cir. 2008)(interpreting Carey v. Musladin, 549 U.S. 70 (2006)).  Where the Supreme Court's "cases give no clear answer to the question presented, ...., it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law," and habeas "relief is unauthorized" under the explicit language of

28 U.S.C. § 2254(d)(1).  Wright v. Van Patten, __ U.S. __, 128 S. Ct. 743, 747 (2008)(internal quotation and citation omitted).  If "the threshold question as to the existence of clearly established federal law" is answered affirmatively, then the reviewing court must determine whether the state court decision is either contrary to or an unreasonable application of that law. House, 527 F. 3d at 1010, 1018. A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Williams, 529 U.S. at 405-406, 413.

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner."  Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).   With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court precedent] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(per curiam).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson,  542 U.S. 649, 652 (2004)(per curiam)(citations omitted).

As to any factual issues raised in the Petition, the court must determine whether the state appellate court's decision was based on an "unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  In

this regard, the AEDPA mandates that factual findings made by a state trial or appellate court

are presumptively correct and may be rebutted only by "clear and convincing evidence." 28

U.S.C. § 2254(e)(1).

III. <u>Ineffective Assistance of Trial Counsel - Failure to Challenge Juror</u>

In ground two, Petitioner contends[2] that he was denied effective assistance of trial

counsel because his attorney "allowed an objectionable juror to remain on the jury whose

mother was a victim of consistent domestic abuse and assault, the same identical crimes

charged, that petitioner was tried and convicted of in CF-04-2175, counts 1, 2, and 5."

Petition, at 4.  Petitioner requests that the Court conduct an evidentiary hearing concerning

these claims because "Trial Counsel, Chris Box and Appellate Counsel, Bill Zuhdi, failed

and refused to develop the factual basis of this claim in the state court proceedings at the trial

level and on direct appeal...." <u>Id.</u> at 5.

Petitioner claim of ineffective assistance of trial counsel is governed by the well-

established two-part test set forth in <u>Strickland</u>, <u>supra</u>.  Under this test, Petitioner must

establish that (1) his trial counsel's performance fell below an objective standard of

reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the

---

[2]Petitioner also asserts in ground two that he was denied due process as a result of the trial court's failure to *sua sponte* remove the allegedly "objectionable juror" from the jury panel.  This particular claim will be addressed <u>infra</u> in connection with the issue of Petitioner's procedural default because Petitioner did not raise this particular issue in his direct appeal and the OCCA refused to review the merits of the issue in Petitioner's post-conviction appeal.

result of the proceedings would have been different. Strickland, 466 U.S. at 688, 694; see also Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

In his first proposition asserted in his direct appeal, Petitioner contended that he was denied effective assistance of trial counsel because his defense attorney failed to remove an "objectionable juror for cause" and failed to have the *voir dire* of prospective jurors recorded and transcribed. Response, Ex. 1, at 19.  Petitioner relied on affidavits submitted by himself and three individuals, two of whom were obviously Petitioner's relatives, to support his claim that a juror, identified only as a black male, was allowed to remain on the jury despite the prospective juror's statements during *voir dire* that he had "seen his mother abused the entire time he had been growing up" or had "stated his mother was in an abusive relationship." Response, Ex. 1, at Ex. A, Affidavit of Lequilless Gaines; Ex. B, Affidavit of Brenda Gaines; Ex. C, Affidavit of Claudette Gaines; Ex. D, Affidavit of Carolyn Peters.  Petitioner further averred in his affidavit that he "told my attorney I did not want the man to be on the jury because from what the man said about his mom being abused, I knew he would vote me guilty, no matter what the evidence" but that his attorney told Petitioner "he couldn't take the man off the jury because it was Christy's [sic] turn."  Response, Ex. 1, at Ex. A.

Applying the Strickland standard, the OCCA rejected Petitioner's claim of ineffective assistance of trial counsel.  With respect to Petitioner's claim of ineffective assistance of counsel based on his counsel's failure to have *voir dire* recorded and transcribed, the OCCA found that Petitioner had not shown prejudice because he had "not shown that the outcome of his trial would have been different had counsel had jury selection recorded." Response,

Ex. 3, at 2.  Relying on a previous OCCA opinion, <u>Davis v. State</u>, 123 P.3d 243, 246 (Okla.

Crim. App. 2006), in which the court held that a trial attorney's actions during jury selection

generally are considered matters of trial strategy, the OCCA rejected Petitioner's contention

that his defense counsel provided ineffective assistance in failing to challenge a juror whose

mother had been a victim of domestic abuse. Response, Ex. 3, at 2.  In connection with these

findings, the OCCA considered the affidavits Petitioner presented with his claim and his

request for a remand for an evidentiary hearing and rejected Petitioner's request for an

evidentiary hearing. The OCCA found that Petitioner's evidentiary documents presented with

his claim and motion for remand were "insufficient to show by clear and convincing

evidence that there is a strong possibility that counsel was ineffective." Response, Ex. 3, at

2-3 n. 3.  This finding addressed the OCCA's procedural rule, Rule 3.11(B)(3)(b), Rules of

the Oklahoma Court of Criminal Appeals, tit. 22, ch. 18, app., which provides that

> [w]hen an allegation of the ineffective assistance of trial counsel
> is predicated upon an allegation of failure to trial counsel to
> properly utilize available evidence or adequately investigate to
> identify evidence which could have been made available during
> the course of the trial, and a proposition of error alleging
> ineffective assistance of trial counsel is raised in the brief-in-
> chief of Appellant, appellate counsel may submit an application
> for an evidentiary hearing, together with affidavits setting out
> those items alleged to constitute ineffective assistance of trial
> counsel....This Court will utilize the following procedure in
> adjudicating applications regarding ineffective assistance of trial
> counsel based on evidence not in the record:
> (i) In order to rebut the strong presumptions of regularity of trial
> proceedings and competency of trial counsel, the application and
> affidavits must contain sufficient information to show this Court
> by clear and convincing evidence there is a strong possibility
> trial counsel was ineffective for failing to utilize or identify the

> complained-of evidence.
> (ii) If this Court determines such a strong possibility exists, it shall remand the matter to the trial court for an evidentiary hearing, utilizing the adversarial process, and direct the trial court to make findings of fact and conclusions of law solely on the issues and evidence raised in the application.

In order to obtain an evidentiary hearing on habeas review, Petitioner has the burden to show that he "'diligently sought to develop the factual basis underlying his habeas petition, but a state court prevented him from doing so' or that his evidentiary proffer falls within an exception to 28 U.S.C. § 2254(e)(2)'s ban on the admission of new evidence." Wilson v. Sirmons, ___ F.3d __, 2008 WL 3166975, * 10 (10th Cir. 2008)(quoting Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir. 1998)).  Other than a general statement that an evidentiary hearing is not required because Petitioner failed to satisfy the requirements for obtaining one, Respondent does not address Petitioner's specific request for an evidentiary hearing with respect to his claim of ineffective assistance of trial counsel.  The record shows Petitioner diligently sought to develop the factual basis underlying this claim before the OCCA.  The OCCA expressly evaluated the non-record evidence Petitioner presented in connection with his claim of ineffective assistance of counsel and his request for an evidentiary hearing.  Response, Ex. 3, at 2, n. 3.  The OCCA referenced the non-record affidavits in its finding that Petitioner's trial counsel was not "ineffective in failing to remove a juror whose mother had been a victim of domestic violence." Response, Ex. 3, at 2.  Under these circumstances, AEDPA's deferential standard applies to Petitioner's Sixth Amendment claim of ineffective assistance of trial counsel. Wilson, 2008 WL 3166975, * 10 ("Had the

state court evaluated the non-record evidence in its denial of Mr. Wilson's <u>Strickland</u> claim and his request for an evidentiary hearing, we would apply AEDPA's deferential standard.").

Petitioner has not shown that the OCCA's decision in this respect was contrary to or an unreasonable application of the <u>Strickland</u> standard or that it was "based on an unreasonable determination of the facts" in light of the record. 28 U.S.C. § 2254(d)(2). Petitioner has not shown a reasonable probability that the result of the trial would have been different had his trial counsel requested the recording and transcription of the *voir dire* portion of the trial.  With respect to Petitioner's claim of ineffective assistance due to the failure to challenge a prospective juror for bias, Petitioner has not shown that his trial counsel's performance in this regard was objectively unreasonable. "Generally, an attorney's actions during *voir dire* are considered to be matters of trial strategy, which cannot be the basis of an ineffective assistance claim unless counsel's decision is so ill chosen that it permeates the entire trial with obvious unfairness." <u>Neill v. Gibson</u>, 278 F.3d 1044, 1055 (10th Cir. 2001)(internal punctuation marks omitted), <u>cert. denied</u>, 537 U.S. 835 (2002).  The OCCA presumed the truthfulness of Petitioner's assertion in his affidavit and the assertions of the other affiants presented with his appeal that a juror whose mother had been a victim of domestic violence was allowed to remain on the jury. This factual finding is presumed correct here as well. 28 U.S.C. § 2254(e)(1).  Depending on the responses of the juror to further questioning by the trial court and counsel, a reasonable attorney could have found that the juror was acceptable and not challengeable for cause.  <u>See</u> <u>United States v. Tegzes</u>, 715 F.2d 505, 507 (11th Cir. 1983)(bias or prejudice toward crime does not disqualify person to

sit as juror in criminal case as long as feelings do not lead to predisposition toward prosecution or accused).  Moreover, Petitioner has not shown prejudice.  Petitioner surmises that the unidentified juror could not impartially consider the evidence because he had witnessed his mother as a victim of domestic abuse, but Petitioner does not assert that the juror made statements indicating he had "such a fixed opinion that he or she could not judge impartially." Hale v. Gibson, 227 F.3d 1298, 1319 (10th Cir. 2000)(noting, in connection with claim of ineffective assistance based on trial counsel's failure to challenge jurors who had preconceived notions of petitioner's guilt, that petitioner must show more than that the juror had a preconceived notion as to the guilt or innocence of the accused; he must also show that the juror had such a fixed opinion that he or she could not judge impartially), cert. denied, 533 U.S. 957 (2001).  Accordingly, Petitioner is not entitled to habeas relief concerning this Sixth Amendment claim.  Because Petitioner has not shown that "his allegations, if true and not contravened by the record," entitle him to habeas relief, Petitioner is not entitled to an evidentiary hearing.  Walker v. Gibson, 228 F.3d 1217,  1231 (10th Cir. 2000)(internal quotation and citation omitted), cert. denied, 533 U.S. 933 (2001).  .

IV.  Ineffective Assistance of Appellate Counsel - Failure to Develop Factual Basis of Ineffective Assistance of Trial Counsel Claim Based on Counsel's Failure to Challenge Juror

Petitioner contends in ground three that his appellate counsel provided constitutionally ineffective assistance by failing to subpoena or call any witnesses at "the evidentiary hearing conducted on October 25, 2005." Petition, at 8.  This contention is governed by the two-part test established by the Supreme Court in Strickland.  To obtain habeas relief, Petitioner must

show both that his attorney's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the appeal would have been different but for counsel's deficient performance. Strickland, 466 U.S. at 688, 694. The performance and prejudice components of the test may be addressed in any order, and the court "need not address both if a petitioner fails to make the requisite showing for one." Walker, 228 F.3d at 1231.

Petitioner was not prejudiced by his appellate attorney's failure to subpoena or call witnesses in connection with the OCCA's remand order.  The OCCA's remand order entered October 25, 2005, dictated that the district court "verify whether the appeal record can be supplemented" with transcription of the *voir dire* portion of the trial and whether "the record is incomplete because the transcription of sentencing is inaccurate" concerning certain dialog between Petitioner's trial counsel, the district court, and Petitioner during sentencing. Response, Ex. 8.  The remand order did not contemplate an evidentiary hearing concerning the merits of Petitioner's claim of ineffective assistance of trial counsel based on counsel's failure to challenge the allegedly biased juror.  In the court's decision in Petitioner's appeal, the OCCA denied Petitioner's request for remand for an evidentiary hearing to consider the merits of his Sixth Amendment claim.  Thus, Petitioner has not shown that the result of his appeal would have been different but for his appellate counsel's failure to subpoena witnesses at the hearing conducted on October 25, 2005, in the district court pursuant to the OCCA's remand order.  The OCCA's rejection of Petitioner's claim of ineffective assistance of appellate counsel was not contrary to or an unreasonable application of the governing

15

Strickland standard.  Hence, Petitioner is not entitled to habeas relief concerning this claim.

V. Prosecutorial Misconduct

In ground four of the Petition, Petitioner asserts that prosecutorial misconduct deprived him of due process and a fair trial.  Petitioner refers to prosecutorial comments during closing arguments and alleges that these comments "so infected the trial of my case with unfairness as to make the resulting convictions in CF-04-2175 a denial of due process." Petition, at 10.

At trial, a witness testified that he was dating the victim and he was at the victim's residence on March 30, 2004. TR vol. I, at 45. He testified that Petitioner was let into the residence by the victim and that Petitioner began yelling at him and at the victim.  The witness testified he left the victim's residence, called 911 for police assistance, and informed the dispatcher that Petitioner was beating the victim. TR vol. I, at 49.  A taped recording of this witness's 911 emergency call that night was played for the jury. TR vol. I, at 49.

The victim testified that she and Petitioner had been involved in a relationship in which they had lived together for two years and had a child together. TR vol. I, at 56-57. She testified that they had ended the relationship in February 2004, that the relationship had been rekindled in July or August 2004, and that at the time of trial they were "back in a relationship." TR vol. I, at 57, 63.  She testified that Defendant's family members provided child care for their child. TR vol. I, at 62.  She stated that on March 30, 2004, Petitioner came to her house and found a man in her bedroom, got angry, told her to take a shower because she was "nasty ... for having another man in my bed," and hit her with his belt on her legs

16

two or three times and also unintentionally hit her breast area. TR vol. I, at 66-73. Photographs of marks left by the belt on the victim's leg and breast were admitted into evidence. TR vol. I, at 75. Although the victim testified that she had been hitting Petitioner, too, that night, she admitted she had not told the police that she had hit the Petitioner. TR vol. I, at 78-79. The victim denied that Petitioner had hit her in the face although she admitted the photograph of her face showed a "red" mark on her face. TR vol. I, at 76. The victim admitted she was scared and that she filed for a victim's protection order against Petitioner the following day. TR vol. I, at 80, 82-83. The protection order was admitted into evidence. TR vol. I, at 83-84. The victim admitted that she made a written statement in connection with the victim's protection order describing the reasons she was seeking the protection order, and this statement was read to the jury. TR vol. I, at 84-86. In this statement, the victim described a phone conversation with Petitioner following his arrest in which he threatened to beat her again "worse than he ever has" when he got out of jail. TR vol. I, at 86. The victim also testified that on April 6, 2004, she completed a form at the police station stating that she was refusing to prosecute Petitioner because he provided child care for their son and their son needed Petitioner although she did not want Petitioner around her. TR vol. I, at 87-89. The victim testified that the protection order was issued in April 2004 and that in October 2004 she moved to dismiss the protective order. TR vol. I, at 89-91. The victim testified that she asked to have the protection order dismissed because she and Petitioner were "going to work on it" and he was going to work on his anger. TR vol. I, at 92. The victim testified that Petitioner's mother posted bail for Petitioner and he was

17

released from jail. TR vol. I, at 92.  The victim stated that on April 11, 2004, Petitioner got

angry because he did not like her friend, that Petitioner came to her house, and that she

locked the front and back doors, but Petitioner kicked in the back door. TR vol. I, at 93-94.

The victim stated that she went upstairs and called 911 for police assistance but that before

she could describe the situation to the dispatcher Petitioner came upstairs, took the phone

from her,  removed the phone's battery, and threw the phone on the floor.  TR vol. I, at 98.

The victim testified that Petitioner grabbed her shirt and grabbed her hair along with her

shirt.  TR vol. I, at 100.  The victim's preliminary hearing testimony was then read to the

jury, and in this testimony the victim stated that Petitioner had pulled her down the stairs by

her hair. TR vol. I, at 101-102.  The victim testified that she was hitting Petitioner and that

her shirt was ripped, and that they "got in [Petitioner's] truck and drove around." TR vol. I,

at 104-105.  Although the victim testified that she voluntarily got into the truck "[t]o go talk"

with Petitioner, her preliminary hearing testimony in which she described being forced into

the truck by Petitioner was read to the jury.  TR vol. I, at 107-108.  The victim admitted she

testified truthfully at the preliminary hearing. TR vol. I, at 110.  The victim also admitted that

she was not in a relationship with Petitioner at the time of the preliminary hearing. TR vol.

I, at 112.  Photographs taken of the victim's door and the victim on the night of April 11,

2004, were admitted into evidence. TR vol. I, at 114-117.  The victim denied knowing how

the marks on her face, arm, and neck shown in the photographs were made, although she also

stated that Petitioner scratched her back with his fingernails. TR vol. I, at 117-119.  The

victim's statements made to police on April 6, 2004, and April 12, 2004, were admitted into

18

evidence and read to the jury. TR vol. I, at 142-147.

The following comments made by the prosecutor during closing arguments are the focus of the Petitioner's claim of prosecutorial misconduct:

> You've seen her since she testified. Who's she sitting out here with? How hard do you think it was for her to get on that witness stand with 8 or 10 of his family members out here watching her? How hard do you think that was for her?

TR vol. II, at 134. Petitioner also refers to the following statements made by the prosecutor during closing arguments:

> Mr. Box talked to you a little bit about how ... the detective in this case, knew what was going on in this case and you're right. He did. He let [the victim] fill out a refusal to prosecute because he knew it was for her safety. He knew she needed to have something to tell this guy, "Look, I filled it out, I told them I don't want to prosecute. I can't do anything about it. I've done all I can." He knew that [the victim] was scared....She's scared of him, she's by herself, she's got his family here. That's the only family she has here and they're sitting out here in the courtroom watching her testify. She is scared.
> * * * *
> And you know why [the victim] testified the way she did. You know what the pressures on her are like. She's not strong enough to do it. You have to do it.

TR vol. II, at 151-152.

Petitioner raised this same claim of prosecutorial misconduct in his direct appeal. The OCCA rejected the claim and found that the referenced portion of closing argument by the prosecutor "was based on reasonable inferences from the evidence and was fair comment on the victim's bias." Response, Ex. 3, at 4.

In this claim, Petitioner does not allege that the prosecutor's argument directly

affected a specific constitutional right.   Under these circumstances, "[h]abeas relief is available for prosecutorial misconduct only when the misconduct is so egregious that it renders the entire trial fundamentally unfair." <u>Cummings v. Evans</u>, 161 F.3d 610, 618 (10th Cir. 1998)(citing <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-648 (1974)), <u>cert. denied</u>, 526 U.S. 1052 (1999).  <u>Cf</u>. <u>Torres v. Mullin</u>, 317 F.3d 1145, 1158 (10th Cir.), <u>cert. denied</u>, 540 U.S. 1035 (2003)("Where prosecutorial misconduct directly affects a specific constitutional right such as the presumption of innocence or privilege against self-incrimination, a habeas petitioner need not establish that the entire trial was rendered unfair, but rather that the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right.").   This determination is made "only after considering all of the surrounding circumstances, including the strength of the state's case." <u>Malicoat v. Mullin</u>, 426 F.3d 1241, 1255 (10th Cir. 2005), <u>cert. denied</u>, 547 U.S. 1181 (2006).

Petitioner has not shown that the OCCA's rejection of this claim was contrary to or an unreasonable application of the Supreme Court's decision in <u>Donnelly</u>.   Viewed in the context of the entire trial, the prosecutor's statements did not render Petitioner's trial fundamentally unfair.  The victim's trial testimony conflicted with her previous statements to law enforcement officials and with her previous testimony at Petitioner's preliminary hearing.  The prosecutor presented these inconsistencies to the jury, and the victim admitted that her preliminary hearing was truthful and that she had been scared of Petitioner at the time of the offenses.  The victim also admitted that before the trial she had rekindled her relationship with Petitioner and relied on his family members to care for her child while she

20

worked.  The prosecutor's statements to the jury during closing arguments properly directed the jury's attention to the victim's inconsistent statements and her motive for the inconsistencies.  Petitioner is not entitled to habeas relief concerning this claim.

## VI. Procedural Default

In ground one of the Petition, Petitioner alleges that he was denied due process and equal protection rights because the evidence presented at his trial was not sufficient to support the jury's finding of guilt.[3]  Petitioner contends in ground two, *inter alia*, that the trial court's failure to remove the unidentified juror who stated he had witnessed his mother as a victim of domestic abuse on the court's own motion denied him due process and equal protection.  Petitioner did not raise these particular claims in his direct appeal.  He first raised these claims in his post-conviction proceeding, arguing that his trial and appellate counsel provided ineffective assistance by failing to raise the claims in the trial court and on direct appeal. Response, Ex. 4.  Relying on the court's well-established procedural default rule, the OCCA refused to review the merits of the claims.  Response, Ex. 5.  The OCCA rejected

---

[3]Petitioner alleges in ground one that the information charging him in counts 1, 2, 4, and 5 did not allege "each and every essential element of the crimes charged and ... when [Petitioner] was convicted at his jury trial the lack of sufficient evidence or [sic] of the essential elements of the crimes charged to convict violated the Due Process standards mandated by the Supreme Court in Jackson v. Virginia, 443 US 307, 309 (1979[)] and its progeny." Petition, at 3.  Respondent asserts that Petitioner's argument in ground one is directed toward the sufficiency of the evidence presented at trial and not toward the sufficiency of the information charging him with the offenses of which he was found guilty at trial.  Because Petitioner has relied on the Supreme Court's decision in Jackson and a Tenth Circuit Court of Appeals' decision, Stallings v. Tansy, 28 F.3d 1018 (10th Cir. 1994), that applies the Jackson standard, in asserting that his due process rights were violated, Petitioner's claim in ground one is generously construed to assert a challenge to the sufficiency of the evidence under the prevailing standard for such challenges set forth in Jackson, supra.

Petitioner's ineffective assistance of appellate counsel claim on its merits, finding that under Strickland's two-part test Petitioner had failed to show either deficient representation in his direct appeal or that the result of his appeal would have been different but for counsel's deficient performance.

Petitioner again relies on a claim of ineffective assistance of appellate counsel as cause for his procedural default in his direct appeal.[4]  "'Cause' must be 'something external to the petitioner, something that cannot fairly be attributed to him....'" Steele v. Young, 11 F.3d 1518, 1522 (10th Cir. 1993)(quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)). "Attorney error amounting to constitutionally ineffective assistance of counsel constitutes 'cause' for a procedural default." Hickman v. Spears, 160 F.3d 1269, 1272 (10th Cir. 1998). To establish "cause" sufficient to overcome the procedural bar based on ineffective assistance of appellate counsel, Petitioner must satisfy both prongs of the test established in Strickland; that is, he must show that his attorney's representation fell below an objective standard of reasonableness and that counsel's errors prejudiced the defense. Strickland, 466 U.S. at 687.  "Judicial scrutiny of the adequacy of attorney performance must be strongly deferential: '[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Blackwell, 127 F.3d

---

[4]Petitioner also asserts that ineffective assistance of trial counsel provides cause for his state court procedural default.  In light of the OCCA's sole reliance on its procedural bar rule for claims not raised in a direct appeal as the reason for the court's refusal to review the merits of Petitioner's procedurally-defaulted claims, it is Petitioner's default of the issues in his direct appeal that must be excused in order for Petitioner to obtain federal habeas review of the issues.  Therefore, Petitioner's assertion of ineffective assistance of trial counsel does not provide cause for his state court procedural default.

947, 955 (10th Cir. 1997)(quoting Strickland, 466 U.S. at 689). "Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the error." Id. Accord, Kimmelman, 477 U.S. at 381; Strickland, 466 U.S. at 689. Prejudice, under the second prong, is shown by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim...to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

The Sixth Amendment "does not require an attorney to raise every nonfrivolous issue on appeal." Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995)(citing Jones v. Barnes, 463 U.S. 745, 751 (1983)). "It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." Jackson v. Shanks, 143 F.3d 1313, 1321 (10th Cir.), cert. denied, 525 U.S. 950 (1998). If an issue that appellate counsel failed to raise has merit, the court must determine whether counsel's failure to raise the issue was deficient and prejudicial. Hawkins, 185 F.3d at 1152.

"If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance...." Cargle, 317 F.3d at 1202. If the omitted issue "has merit but is not so compelling ... [the court must assess] ... the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its

omission; of course, if the issue is meritless, its omission will not constitute deficient performance." Id. See Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999)(if omitted issue is meritless, then counsel's failure to raise it on appeal is not constitutionally ineffective assistance).

Petitioner has failed to show a reasonable probability that the result of his appeal would have been different had his appellate counsel argued the procedurally-defaulted issue raised in ground one. Petitioner provides no factual or evidentiary support for his claim of insufficiency of the evidence presented at his trial, and his conclusory allegations are not sufficient to show he was prejudiced by his appellate counsel's failure to assert a challenge to the sufficiency of the evidence presented at Petitioner's trial. See United States v. Fisher, 38 F.3d 1144, 1147 910th Cir. 1994)(holding that a *pro se* defendant's conclusory allegations were not sufficient to support an ineffective assistance of counsel claim without supporting averments). The OCCA's rejection of Petitioner's claim of ineffective assistance of appellate counsel due to his appellate counsel's failure to raise the claim asserted in ground one of the Petition was not contrary to or an unreasonable application of the Strickland standard.

With respect to Petitioner's assertion in ground two that he was denied due process and a fair trial because the trial court did not *sua sponte* dismiss the allegedly "objectionable juror" during *voir dire*, Petitioner asserted in his post-conviction appeal that the unidentified "juror testified that he had seen and witness [sic] his mother abused the entire time of his childhood growing up." Response, Ex.4, at 4. It is well established that a juror should be excused for cause if a particular belief will "prevent or substantially impair the performance

24

of his duties as a juror in accordance with his instructions and his oath." <u>Wainwright v. Witt</u>, 469 U.S. 412, 424 (1985).   However, if upon questioning a juror the court ascertains that the juror "can lay aside his opinion and render a verdict based on the evidence presented in court," the juror has satisfied the constitutional standard for impartiality. <u>Patton v. Yount</u>, 467 U.S. 1025, 1037 n. 12 (1984).   Although Petitioner surmises that this juror could not render an impartial verdict, Petitioner provides no further information concerning the examination of this juror by the court or by counsel.   Petitioner has not pointed to any statements by the juror creating an inference of actual bias against Petitioner.   In the face of the juror's statements of previous experience with domestic abuse, the trial court could have been convinced by the juror's answers to other questioning by the court and by counsel that the juror could make a fair and impartial decision based on the facts in the case despite the juror's personal experience.   The record indicates that the trial court exercised its discretion in overseeing the selection of the jury. OR 138-140.   <u>See</u> <u>Mu'Min v. Virginia</u>, 500 U.S. 415, 427 (1991)("our own cases have stressed the wide discretion granted to the trial court in conducting *voir dire* in the area of pretrial publicity and in other areas of inquiry that might tend to show juror bias").   Accordingly, the trial court's implicit finding that the jury selected for Petitioner's trial could impartially reach a verdict is entitled to deference. <u>See</u> <u>Patton</u>, 467 U.S. at 1037 (when partiality of trial jury is questioned in federal habeas corpus proceeding question is "plainly one of historical fact" and is entitled to deference).   Petitioner has not shown prejudice as a result of his appellate counsel's failure to assert this claim in Petitioner's direct appeal.   Because Petitioner has failed to show that his appellate counsel

provided constitutionally ineffective assistance, Petitioner has not shown cause sufficient to excuse his state court procedural default of these issues.

Under these circumstances, Petitioner may only obtain federal habeas review of his procedurally-defaulted claims in grounds one and two if he shows that this Court's failure to review the merits of his defaulted claims would result in a fundamental miscarriage of justice. This exception to the procedural default doctrine applies only in cases where the habeas petitioner can show that the claimed errors "'probably resulted in the conviction of one who was actually innocent.'" Sellers v. Ward, 135 F.3d 1333, 1338 (10th Cir.)(quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)(internal quotations omitted)), cert. denied sub nom. Sellers v. Gibson, 525 U.S. 1024 (1998). See Herrera v. Collins, 506 U.S. 390, 404 (1993)("The fundamental miscarriage of justice exception is available only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence."). Petitioner has presented only conclusory allegations of innocence that are not supported by any evidence. Petitioner has not presented evidence showing it is "more likely than not that no reasonable juror" would have convicted him. See Schlup, 513 U.S. at 327 (holding that in order for a petitioner to succeed on an actual innocence claim he or she must demonstrate it is more likely than not that no reasonable juror could convict the petitioner light of the new evidence). Consequently, Petitioner has not shown that application of the fundamental miscarriage of justice exception to excuse his state court procedural default is warranted, and federal habeas review of Petitioner's procedurally-defaulted claims is barred.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by _____September 10th_____ , 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein.  Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____21st_____ day of _____August_____ , 2008.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE